Case 4:22-cv-03198   Document 124   Filed on 06/24/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
June 24, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN VALADEZ, individually and on behalf of the estates of her minor children, Aaron Mejia and Lisa Mejia, | § § § § § | CIVIL ACTION NO. H-22-3198 |
| Plaintiff, | § | |
| v. | § § | |
| VALDEZ, LLC and MARCUS NOLAND LEE, | § | |
| Defendants. | *CONSOLIDATED WITH* | |
| TARA WELBORN MEJIA, individually and as the administrator of the estate of Michael Mejia, deceased, | § § § § § | CIVIL ACTION NO. H-23-1270 |
| Plaintiff, | § § | |
| v. | § § | |
| VALDEZ, LLC and MARCUS NOLAND LEE, | § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The sad facts of this case could be a law school exam question on conflicts of law. A Texas family is driving through Mississippi on their way back to Texas from a vacation in Tennessee. Their car is hit by a truck owned by an LLC whose only member is a citizen of Delaware and whose principal place of business is in Maryland. An employee of the LLC was driving the truck to Pennsylvania from Texas, where the employee had driven to purchase a trailer for the LLC. The employee is a Delaware citizen. The Texas mother and decedents' estates have sued the LLC and

the driver in Texas, asserting state common-law negligence causes of action and seeking compensatory and punitive damages. What state's law controls what issues?

**I.    Analysis**

A federal court sitting in diversity jurisdiction applies the conflicts-of-law rules of the forum state—in this case, Texas. *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 532 (5th Cir. 2020). Texas courts apply the "most significant relationship" test from the RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6 and 145. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). Courts apply the "most significant relationship" test issue-by-issue. *Perez v. ZTE (USA), Inc.*, No. 3:18-CV-2948-B, 2020 WL 3798865, at *2 (N.D. Tex. July 6, 2020); *Hughes Wood Prods. Inc.*, 18 S.W.3d at 205 ("[T]he *Restatement* requires the court to consider which state's law has the most significant relationship *to the particular substantive issue to be resolved*.").

**A.    Conflict of Laws**

The first step is to determine whether there is a conflict between Texas and Mississippi law on the relevant issues. *See SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.) ("[W]e should first determine if the laws are in conflict. If the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice of law question."); *see also Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("'[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary,' and [courts] simply apply the law of the forum state." (quoting reference omitted)). The party advocating the application of a foreign state's law to a particular issue has the burden of establishing a conflict between the laws of the forum state and foreign state. *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246

S.W.3d 42, 53 (Tex. 2008). Otherwise, the forum court "presume[s] that the outcome would be no different under the foreign state's law" and applies the law of the forum state. *Id.*; *see, e.g., Adi Worldlink, LLC v. RSUI Indem. Co.*, No. 4:16-CV-00665-ALM-CAN, 2017 WL 6403047, at *4 (E.D. Tex. Aug. 16, 2017) ("[C]ourts applying Texas choice of law rules presume foreign law would require the same result as Texas substantive law and accordingly apply Texas law unless the proponent of the foreign law shows otherwise."), *report and recommendation adopted*, No. 4:16-CV-665, 2017 WL 4112112 (E.D. Tex. Sept. 18, 2017), *aff'd*, 932 F.3d 369 (5th Cir. 2019).

The defendants moved to apply Mississippi law to all substantive issues. (Docket Entry Nos. 97, 110). The defendants have not shown that the negligence and gross negligence standards are materially different under Texas and Mississippi law.[1] Nor have they shown a conflict between Texas and Mississippi law on the applicability of vicarious liability. Courts in both Texas and Mississippi dismiss ordinary negligence claims based on direct liability against employers that have admitted vicarious liability for an employee's conduct. *See, e.g.*, *Roberts v. Ecuanic Exp., Inc.*, No. 2:12-CV-84-KS-MTP, 2012 WL 3052838, at *2 (S.D. Miss. July 25, 2012) (citing cases); *Williams v. McCollister*, 671 F. Supp. 2d 884, 888 (S.D. Tex. 2009). Because the laws do not conflict, the court applies Texas law to the issues of negligence, gross negligence, and vicarious liability. *See Excess Underwriters at Lloyd's, London*, 246 S.W.3d at 53.

The defendants have shown that Texas and Mississippi law do conflict on hedonic damages and punitive damages, including whether punitive damages are allowed based on vicarious liability. Relevant differences include the following:

- Under both Texas and Mississippi law, hedonic damages are recoverable in at least some personal injury actions but are not treated as a separate category of damages. *See Golden*

---

[1] The defendants cite two Mississippi cases for the proposition that Mississippi courts generally do not find gross negligence in motor vehicle accidents. (Docket Entry No. 97 at ¶ 10). They cite no Texas law on the same issue. *See* (*id.* at ¶¶ 15–16) (citing Texas statutes on the calculation of damages and vicarious liability and citing only one Texas case, for a proposition of law related to hedonic damages).

*Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 767 (Tex. 2003); MISS. CODE § 11-1-69(1). But in wrongful death actions, Mississippi statute precludes "recovery for loss of enjoyment of life caused by death." MISS. CODE § 11-1-69(2). Texas law does not similarly limit hedonic damages in wrongful death actions. *See* TEX. CIV. PRAC. & REM. CODE § 71.002(a) (allowing for "actual damages," without limitation, in a wrongful death action); *id.* § 41.001(12) (defining noneconomic damages as including loss of enjoyment of life); *see also Missouri Pac. R. Co. v. Lane*, 720 S.W.2d 830, 834 (Tex. App.—Texarkana 1986, no writ) ("Loss of enjoyment of life may not be claimed as a separate element of damages, but may be treated as a factor in determining the damages in general or for those for pain and suffering [in a wrongful death action].").

- Both Texas and Mississippi allow punitive damages when a plaintiff proves gross negligence by clear and convincing evidence. TEX. CIV. PRAC. & REM. CODE § 41.003(a)(3); MISS. CODE § 11-1-65(1)(a). But under Mississippi law, punitive damages are an extraordinary and disfavored remedy. *Derr Plantation, Inc. v. Swarek*, 14 So. 3d 711, 718 (Miss. 2009). In Texas, punitive damages may be awarded only if the jury unanimously finds liability for and the amount of punitive damages. TEX. CIV. PRAC. & REM. CODE § 41.003(d).

- The calculation of punitive damages is meaningfully different under each state's statutory scheme. In Mississippi, punitive damages are capped by a defendant's net worth, unless the defendant was convicted of a felony causing the injury or was under the influence of alcohol or drugs. MISS. CODE § 11-1-65(3). In Texas, punitive damages are capped by the amount of economic and noneconomic damages or, if greater, at $200,000. TEX. CIV. PRAC. & REM. CODE § 41.008(b). Under Texas law, a defendant's net worth is one factor to be considered when determining the amount of punitive damages. *Id.* § 41.011(a).

- Mississippi law does not allow punitive damages based on vicarious liability. *Buckalew v. Schneider Nat. Carriers, Inc.*, No. 3:13CV189-LG-JCG, 2014 WL 4146654, at *3 (S.D. Miss. Aug. 19, 2014). Under Texas law, an employer may be liable for punitive damages for an employee's criminal act if, among other things, the employer acted with malice in employing or retaining an unfit employee. TEX. CIV. PRAC. & REM. CODE § 41.005(c).

Given these differences, it is not surprising that the Texas mother who suffered the loss of her husband and two children in the Mississippi car crash, along with the decedents' estates, argue for the application of Texas substantive law. *See* (Docket Entry Nos. 102, 107). Nor is it surprising that the defendants, neither of whom is a Texas or a Mississippi resident, want Mississippi law to apply to all these issues. *See* (Docket Entry Nos. 97, 110).

  **B.** **Choice of Law**

Under Texas law, the choice-of-law analysis is governed by Sections 6 and 145 of the

4

RESTATEMENT (SECOND) OF CONFLICT OF LAWS. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). Section 6 states:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (Am. L. Inst. 1971). Section 145 gives additional guidance for tort cases:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 145.

The record shows that Mississippi and Texas law conflict as to (1) the availability of hedonic damages in wrongful death cases, and (2) the standards for and calculation of punitive damages. The collision occurred in Mississippi. Most of the injuries also occurred in Mississippi,

5

although the surviving plaintiff has alleged that since her return to Texas, she continues to suffer mental anguish and other effects from the losses and injuries sustained in the Mississippi collision. The primary conduct causing the injuries and losses—the collision between the truck Lee drove and the plaintiffs' car—occurred in Mississippi. Other, less directly relevant conduct occurred elsewhere: Valdez LLC hired and vetted Lee in Maryland, and the collision occurred during Lee's drive to Pennsylvania after purchasing a trailer in Texas for Valdez LLC. Lee is a citizen of Delaware. Valdez LLC has its principal place of business in Maryland, and its only member is a citizen of Delaware. The plaintiffs and victims are Texas citizens. All these contacts must be "evaluated according to their relative importance with respect to" each issue on which the defendants have shown that Mississippi and Texas law conflict, in order to determine which state's law has the most significant relationship to the issue.[2] *See id.*; *Hughes Wood Prods. Inc.*, 18 S.W.3d at 205.

The purpose of punitive damages is to punish the defendant for egregious conduct and to deter the defendant and others from engaging in similar conduct in the future. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492–93 & n.9 (2008). Although some relevant conduct occurred in Texas and Maryland, the most significant conduct for punitive damages is Lee colliding with the plaintiffs' car in Mississippi. *See Varela v. Zavala Plus, LLC*, No. 05-22-01077-CV, 2024 WL 4533119, at *8 (Tex. App.—Dallas Oct. 21, 2024, pet. denied) (the place of conduct "focuses on the immediate cause of the injuries rather than more remote causes"). The collision occurred after Lee had traveled to Texas to pick up a trailer and a load of steel pipes, and he was driving through Mississippi on his way to deliver the load in Pennsylvania. The defendants would have expected

---

[2] Because "the Restatement only refers to the domicile or residence of 'parties,' the place of injury, and the location of the cause of that injury," the location of witnesses, the investigation, and medical treatment "are irrelevant." *See Hooper v. Marriott Intern., Inc.*, 979 F. Supp. 2d 735, 740 (N.D. Tex. 2013).

that Lee would drive through Mississippi, where he would be subject to Mississippi law applicable to driving in that state.

Mississippi has a strong interest in punishing and deterring unsafe driving on its roads. Those interests are furthered by Mississippi law governing punitive damages, including the statutory removal of a cap on punitive damages for injuries caused by a defendant who was under the influence of drugs when the injuries were inflicted. *See* MISS. CODE 11-1-65(3)(d)(ii). Texas has an interest in punishing those who harm its citizens, but it has a minimal interest in affecting the future conduct of drivers on Mississippi roads. Maryland and Delaware have an interest in protecting their residents and citizens against unreasonable punitive damages awards but little or no relevant interest in regulating driving conduct on Mississippi roads. Texas, Maryland, and Delaware are each interested in protecting their residents and citizens, which diminishes the argument that any one of those states has a more substantial relationship than another based on the parties' residence or citizenship. Because Mississippi is the state where the most significant conduct occurred and is the state with the strongest interest in punishing and deterring dangerous driving on its own roads, Mississippi has the most significant relationship to the issue of punitive damages.[3]

The plaintiffs argue that the location of the accident was "fortuitous," so "the place of injury" should "not play an important role in the selection of the state of the applicable law." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) cmt. e. Given that Mississippi was on

---

[3] Oral argument on the defendants' motion identified several factual disputes that might affect the calculation of the amount of punitive damages, including whether Lee was under the influence of drugs at the time of the incident and the scope of Valdez LLC's operations. It is not clear whether Mississippi's or Texas's statutory scheme would result in a higher punitive damages award. Those factual disputes do not affect the court's conclusion that Mississippi has a more substantial relationship to the issue of punitive damages, for the reasons set out in this opinion. Mississippi law should determine how the facts proven at trial affect the calculation of any punitive damages award.

Lee's driving route (from Texas to Pennsylvania) and the plaintiffs' driving route (from Tennessee to Texas), it is not clear whether the location of the accident was fortuitous. *Compare, e.g.*, *Varela*, 2024 WL 4533119, at *8 (In a case involving a bus accident in Zacatecas, Mexico, "[t]he passengers aboard the bus were traveling from Mexico to various points in the United States," so "the fact that the bus was in Zacatecas when the accident occurred was not fortuitous, i.e., was not the result of chance rather than design.") *with Marines v. UPS Ground Freight, Inc.*, No. DR-08-CV-002-AML/DGG, 2008 WL 11411462, at *3 (W.D. Tex. Sept. 29, 2008) (discounting the location of a car accident as fortuitous when it was "the only connection the parties have" to that state).[4]

Regardless of the outcome of that issue, the important point is not that the injuries occurred in Mississippi, but that Mississippi is the location of the primary conduct allegedly causing the injuries. That fact distinguishes this case from the product-liability cases the plaintiffs cite, in which defective products manufactured in one state caused injuries in another state. *See, e.g.*, *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 426 (5th Cir. 2001) (applying Texas law to a lawsuit involving a helicopter crash in Canada because, although the plaintiff was injured in Canada, "the relevant conduct that [the plaintiff] claims gave rise to his injuries, the marketing and manufacturing of the helicopter, took place in Texas, where [the defendant] maintained its principal place of business"); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421–22 (Tex. 1984) (New Mexico law did not apply to a lawsuit involving a plane crash occurring in that state, when

---

[4] One set of the plaintiffs quotes *Denman v. Snapper Division*, 131 F.3d 546, 549 (5th Cir. 1998), for the proposition that, "[i]n some cases, such as those involving an automobile accident in which the parties are not residents of the state where the accident occurred, the location of the injury is discounted as fortuitous." (Docket Entry No. 102 at 6). The Fifth Circuit in *Denman* was applying Mississippi choice-of-law rules, and that specific proposition was cited to a Mississippi Supreme Court case. *See Denman*, 131 F.3d at 549 (citing *Mitchell v. Craft*, 211 So. 2d 509, 513 (Miss. 1968)). Whether or not the place of the accident in this case was fortuitous, Texas choice-of-law rules and the other factors in § 145 and § 6 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS support applying Mississippi law to punitive damages.

8

the allegedly defective plane seats were designed and manufactured in Kansas, the defendant was a Kansas corporation, and the plane was put into the stream of commerce in Texas); *Sico N. Am., Inc. v. Willis*, No. 14-08-00158-CV, 2009 WL 3365856, at *4–6 (Tex. App.—Houston [14th Dist.] Sept. 10, 2009, no pet.) (applying Minnesota law because the allegedly defective product was designed, manufactured, and placed in the stream of commerce in Minnesota by a Minnesota corporation, even though the injury occurred in Texas); *see also Figueroa v. Williams*, No. V-05-56, 2010 WL 5387599, at *5 (S.D. Tex. Dec. 17, 2010) (Texas law did not apply, even though Texas was the place of injury, when "[m]uch of the conduct leading up to—and allegedly causing—decedents' deaths occurred outside of Texas").[5]

Under Texas law, "the point of the accident [is not] determinative of the law to be applied." *Danner v. Staggs*, 680 F.2d 427, 431 (5th Cir. 1982). But in this case, Mississippi is both the point of the accident and the state with the most significant relationship to the punitive damages issue. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) cmt. c ("If the primary purpose of the tort rule involved is to deter or punish misconduct, . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship."). No other state has a stronger interest in the punitive damages issue than Mississippi.

The analysis is different for hedonic damages. "The primary purpose of awarding compensatory damages in civil actions is not to punish the defendant, but to fairly compensate the

---

[5] One set of the plaintiffs mischaracterizes the Texas Supreme Court's decision in *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979) as holding that "Texas law should apply to an automobile accident involving Texas residents that occurred in Mexico." (Docket Entry No. 107 at 5, 7). To the contrary, in *Gutierrez*, the Texas Supreme Court held that it was "not a foregone conclusion" that Texas law would apply, *even though* both parties were residents of Texas and the "only contact Mexico ha[d] with th[e] case [was] the fact that the accident occurred there." 583 S.W.2d at 319. The Texas Supreme Court remanded for the trial court to consider other facts raised at oral argument that were not in the record. *Id.* In addition to the fact that the Texas Supreme Court did not determine which law applied, *Gutierrez* is distinguishable from this case because both parties were from the forum state and the court did not consider punitive damages specifically.

injured plaintiff." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). In light of that purpose, "the most important contacts in determining which state's law governs compensatory damages will usually be the ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the defendant against financial hardship." *Id.* at 849 (quotation marks and quoting reference omitted). Applying Mississippi's limit on hedonic damages, as the defendants ask us to do, would not serve any Mississippi interest, given that the defendants are not Mississippi residents and the surviving plaintiff will neither receive long-term care nor live in Mississippi. Neither defendant has asked this court to apply Maryland or Delaware law, and it would not have made a difference had the defendants done so. The plaintiffs are a surviving mother and the estates of her minor children and their father, all of whom are Texas citizens. The mother alleges continued pain and suffering, including loss of enjoyment of life, which she is suffering and will continue to suffer in Texas. Texas is the most relevant place of injury for hedonic damages, and Texas has the strongest interest in ensuring that the plaintiffs are fully compensated.

Putting the issues in the framework of the forthcoming RESTATEMENT (THIRD) OF CONFLICT OF LAWS (Am. L. Inst., Tentative Draft No. 4, approved in March 2023), is also helpful. That work makes clear that, when determining which state has the "dominant interest" in a particular issue, courts should resolve whether the issue relates to "conduct" or "persons." *Id.* § 6.01. The availability of punitive damages is an issue relating to conduct, for which the location of the conduct and injury are of primary importance. *Id.* §§ 6.03(a), 6.04. By contrast, the measure of damages—including "the inclusion or exclusion of certain kinds of damages, such as damages for conscious pain and suffering in a wrongful-death action"—relates to whether a plaintiff is fully compensated and is an issue relating to persons, also referred to as a loss-allocation issue. *Id.*

10

§ 6.05 & cmt. d. For issues relating to persons, personal connecting factors, such as the parties' domiciles, are of primary importance. *Id.* § 6.03(b). The framework of conduct-related and person-related issues supports the court's conclusion that in this case, Mississippi law governs the recoverability and measure of punitive damages, while Texas law governs the recoverability and measure of hedonic damages.

## II.   Conclusion

Because the defendants have not shown a conflict of law as to negligence, gross negligence, or vicarious liability, Texas law applies to those issues. Texas law also applies to compensatory damages, including hedonic damages. Mississippi law applies to whether punitive damages are available and in what amount. The defendants' motion to apply Mississippi substantive law, (Docket Entry No. 97), is granted in part and denied in part.

SIGNED on June 24, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge